# Exhibit A

2010L003431

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

Product Liability

| | |
|---|---|
| AUGUSTO SANTILLAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: |
| | ) |
| SNAP-ON INCORPORATED, a foreign | ) |
| corporation, INGERSOLL-RAND | ) |
| COMPANY, a foreign corporation, | ) |
| | ) |
| Defendants, | ) |

## COMPLAINT AT LAW

NOW COMES the Plaintiff, AUGUSTO SANTILLAN, by and through his attorneys, ROMANUCCI & BLANDIN, LLC, and complaining of Defendants, SNAP-ON INCORPORATED and INGERSOLL-RAND COMPANY, pleading hypothetically and in the alternative, states as follows:

### COUNT I
(Santillan v. Snap-On Incorporated – Products Liability/Strict Liability)

1. On and before March 21, 2008, Plaintiff, AUGUSTO SANTILLAN (hereinafter "SANTILLAN") was a resident of the City of Chicago, Cook County, Illinois, and worked at Dynamic Manufacturing, Inc. in the Village of Melrose Park, Cook County, Illinois.

2. On and before March 21, 2008, Defendant, SNAP-ON INCORPORATED (hereinafter "SNAP-ON") was a corporation existing by and under the laws of the State of Delaware, with its principal place of business located in the City of Kenosha, Kenosha County, Wisconsin, and doing business throughout Cook County, Illinois.

3. On and before March 21, 2008, and at all times relevant herein, Defendant, SNAP-ON was a designer, manufacturer, distributor, and marketer of tools, including tools used for automotive repair.

1

4. In particular, Defendant, SNAP-ON, designed, manufactured, distributed, and/or marketed a certain 1/2" to 3/8" adapter socket, Stock # GSAF1E (a photograph of said socket is attached hereto as Exhibit "A"), commonly used to allow tools with a 1/2" drive to be used on sockets with a 3/8" receptacle.

5. Prior to March 21, 2008, Defendant, SNAP-ON, sold and delivered said adapter socket to Dynamic Manufacturing, Inc. in the Village of Melrose Park, Cook County, Illinois.

6. Dynamic Manufacturing, Inc., is a corporation that specializes in the remanufacturing of automatic and manual transmissions, and torque converters for all vehicular and industrial applications.

7. Prior to March 21, 2008, Dynamic Manufacturing, Inc., purchased said adapter socket from Defendant, SNAP-ON, for use in course of its business as remanufacturers of automatic and manual transmissions, and torque converters.

8. On March 21, 2008, Plaintiff, SANTILLAN, used said socket adapter, in conjunction with an air impact wrench manufactured by Ingersoll Rand, during the course of his employment at Dynamic Manufacturing, to remove sockets on a transfer case of a transmission.

9. On and before March 21, 2008, and at all times relevant herein, Defendant, SNAP-ON, knew or should have known that said adapter socket would be utilized by end-users, to perform tasks similar in nature to those performed by Plaintiff, SANTILLAN, on March 21, 2008.

10. On and before March 21, 2008, and at all times relevant herein, Defendant, SNAP-ON, knew or should have known that consumers and end-users would use said adapter sockets in conjunction with air impact wrenches similar in nature to that used by Plaintiff, SANTILLAN, on March 21, 2008.

11. At the time of its design, manufacture, distribution, and/or marketing of said adapter socket, Defendant, SNAP-ON, had a duty to place products into the stream of commerce that were free from defects and/or unreasonable dangers.

12. On and before March 21, 2008, and at all times relevant herein, and notwithstanding said duty, Defendant, SNAP-ON, designed, manufactured, distributed, and/or marketed, said adapter socket in a manner that rendered the product unreasonably dangerous for the use in which intended in one or more of the following respects:

    a. Failed to include adequate and sufficient instructions for the proper use of said adapter socket;

    b. Failed to provide adequate and sufficient warnings against the unreasonable dangers and/or hazards inherent in the use of said adapter socket, including without limitation failure of the adapter socket;

    c. Failed to properly warn consumers and end-users, including Plaintiff, SANTILLAN, of the unreasonably dangerous condition and/or hazards of said adapter socket, including without limitation failure of the adapter socket;

    d. Inadequately designed said adapter socket so as to prevent failure of said adapter socket;

    e. Failed to properly design said adapter socket so as to properly, sufficiently, and adequately ensure the adapter socket did not fail when used in the manner intended;

    f. Failed to properly design said adapter socket for use in the manner intended;

    g. Manufactured said adapter socket in a manner that rendered the adapter socket defective and/or unreasonably dangerous when used in the manner intended;

    h. Failed to properly manufacture said adapter socket for use in the manner intended; and/or

    i. Designed, manufactured, distributed, sold, and/or otherwise placed a defective and/or unreasonably dangerous product into the stream of commerce.

13. At the time said adapter socket left the control of Defendant, SNAP-ON, the condition of said adapter socket was defective and/or unreasonably dangerous due to one or more of the aforesaid conditions.

14. On March 21, 2008, Plaintiff, SANTILLAN, used said adapter socket, in conjunction with said air impact wrench, while removing sockets on a transfer case of a transmission when said adapter socket failed, causing the air impact wrench to strike Plaintiff in the right knee.

15. As a direct and proximate result of one or more of the foregoing conditions, Plaintiff, SANTILLAN, was seriously and permanently injured.

16. As a further direct and proximate result of the aforesaid conditions, Plaintiff, SANTILLAN, sustained injuries including but not limited to past and future pain and suffering, disfigurement, disability, sustained lost earnings and earning capacity, incurred legal responsibility for past medical bills and will likely incur legal responsibility for future medical bills and other damages, all of which injuries and conditions are permanent in nature.

WHEREFORE, Plaintiff, AUGUSTO SANTILLAN, prays for judgment against Defendant, SNAP-ON INCORPORATED, in an amount in excess of fifty thousand dollars ($50,000.00) plus costs of bringing this action, and for any further relief this Court deems appropriate.

## COUNT II
(Santillan v. Snap-on Incorporated – Products Liability/Negligence)

1-11. Plaintiff hereby restates and realleges paragraphs 1 through 11 of Count I as paragraphs 1 through 11 of Count II, as though fully stated herein.

12. On and before March 21, 2008, and at all times relevant hereto, Defendant, SNAP-ON, committed one or more of the following acts and/or omissions, rendering said

adapter socket defective and/or unreasonably dangerous at the time said adapter socket left Defendants, SNAP-ON's control and entered the stream of commerce:

  a. Negligently and carelessly failed to include sufficient and adequate instructions for the proper use of said adapter socket;

  b. Negligently and carelessly failed to provide sufficient and adequate warnings against the unreasonable dangers and/or hazards inherent in the use of said adapter socket, including but not limited to failure of the adapter socket;

  c. Negligently and carelessly failed to properly warn consumers and end users, including Plaintiff, SANTILLAN, of the unreasonably dangerous condition and/or hazards of said adapter socket, including but not limited to failure of the adapter socket;

  d. Negligently and carelessly designed said adapter socket so as to prevent failure of the adapter socket;

  e. Negligently and carelessly failed to properly design said adapter socket, so as to properly, sufficiently, and adequately ensure the adapter socket did not fail when used in the manner intended;

  f. Negligently and carelessly failed to properly design said adapter socket for use in the manner intended;

  g. Negligently and carelessly manufactured said adapter socket in a manner that rendered the adapter socket defective and/or unreasonably dangerous;

  h. Negligently and carelessly failed to properly manufacture said adapter socket for use in the manner intended; and/or

  i. Negligently and carelessly manufactured, designed, distributed, sold, and/or otherwise placed a defective and/or unreasonably dangerous product into the stream of commerce.

13. On March 21, 2008, Plaintiff, SANTILLAN, used said adapter socket, in conjunction with said air impact wrench, while removing sockets on a transfer case of a transmission when said adapter socket failed, causing the air impact wrench to strike Plaintiff in the right knee.

14. As a direct and proximate result of one or more of the foregoing conditions, Plaintiff, SANTILLAN, was seriously and permanently injured.

15. As a further direct and proximate result of the aforesaid conditions, Plaintiff, SANTILLAN, sustained injuries including but not limited to past and future pain and suffering, disfigurement, disability, sustained lost earnings and earning capacity, incurred legal responsibility for past medical bills and will likely incur legal responsibility for future medical bills and other damages, all of which injuries and conditions are permanent in nature.

WHEREFORE, Plaintiff, AUGUSTO SANTILLAN, prays for judgment against Defendant, SNAP-ON INCORPORATED, in an amount in excess of fifty thousand dollars ($50,000.00) plus costs of bringing this action, and for any further relief this Court deems appropriate.

## COUNT III
### (Santillan v. Snap-On Incorporated – Products Liability/Failure to Warn)

1-11. Plaintiff repeats and realleges paragraphs 1 through 11 of Count I as paragraphs 1 through 11 of Count III, as though fully stated herein.

12. Defendant, SNAP-ON, knew or should have known that consumers and end-users, including Plaintiff, SANTILLAN, would use the aforesaid adapter socket in the manner described herein.

13. Defendant, SNAP-ON, knew or should have known of the dangers associated with the manner and circumstances of Plaintiff, SANTILLAN's foreseeable use of the aforesaid adapter socket, which danger was not obvious to the general public.

14. On and before March 21, 2008, and at all times relevant herein, it was the duty of Defendant, SNAP-ON, to warn against foreseeable dangers associated with the use of the aforesaid adapter socket.

15. Notwithstanding the aforesaid duty, Defendant, SNAP-ON, committed one or more of the following acts and/or omissions:

    a. Failed to include adequate and sufficient warnings with said adapter socket;

    b. Failed to provide adequate warnings to individuals of the dangers and/or hazards inherent in the use of said adapter socket; and/or

    c. Failed to adequately and sufficiently warn of the nature and type of the aforesaid dangerous conditions and/or defects.

16. On March 21, 2008, Plaintiff, SANTILLAN, used said adapter socket, in conjunction with said air impact wrench, while removing sockets on a transfer case of a transmission when said adapter socket failed, causing the air impact wrench to strike Plaintiff in the right knee.

17. As a direct and proximate result of one or more of the foregoing conditions, Plaintiff, SANTILLAN, was seriously and permanently injured.

18. As a further direct and proximate result of the aforesaid conditions, Plaintiff, SANTILLAN, sustained injuries including but not limited to past and future pain and suffering, disfigurement, disability, sustained lost earnings and earning capacity, incurred legal responsibility for past medical bills and will likely incur legal responsibility for future medical bills and other damages, all of which injuries and conditions are permanent in nature.

WHEREFORE, Plaintiff, AUGUSTO SANTILLAN, prays for judgment against Defendant, SNAP-ON INCORPORATED, in an amount in excess of fifty thousand dollars ($50,000.00) plus costs of bringing this action, and for any further relief this Court deems appropriate.

## COUNT IV
### (Santillan v. Ingersoll-Rand Company – Products Liability/Strict Liability)

1. On and before March 21, 2008, Plaintiff, AUGUSTO SANTILLAN (hereinafter "SANTILLAN") was a resident of the City of Chicago, Cook County, Illinois, and worked at Dynamic Manufacturing, Inc. in the Village of Melrose Park, Cook County, Illinois.

2. On and before March 21, 2008, Defendant, INGERSOLL-RAND COMPANY (hereinafter "INGERSOLL"), was a corporation existing by and under the laws of the State of New Jersey, with its principal place of business located in the City of Piscataway, New Jersey, and doing business throughout Cook County, Illinois.

3. On and before March 21, 2008, and at all times relevant herein, Defendant, INGERSOLL was a designer, manufacturer, distributor, and marketer of tools, including air powered tools used for automotive repair.

4. In particular, Defendant, INGERSOLL, designed, manufactured, distributed, and/or marketed a certain air impact wrench, generally known as a Model 2707P1 Twin Hammer Impactool (a photograph of said air impact wrench is attached hereto as Exhibit "B"), commonly used in the course of automotive repair.

5. Prior to March 21, 2008, Defendant, INGERSOLL, sold and delivered said air impact wrench to Dynamic Manufacturing, Inc. in the Village of Melrose Park, Cook County, Illinois.

6. Dynamic Manufacturing, Inc., is a corporation that specializes in the remanufacturing of automatic and manual transmissions, and torque converters for all vehicular and industrial applications.

7. Prior to March 21, 2008, Dynamic Manufacturing, Inc., purchased said air impact wrench from Defendant, INGERSOLL, for use in course of its business as remanufacturers of automatic and manual transmissions, and torque converters.

8. On March 21, 2008, Plaintiff, SANTILLAN, used said air impact wrench, in conjunction with a 1/2" to 3/8" adapter socket manufactured by Snap-On Incorporated, during the course of his employment at Dynamic Manufacturing, to remove sockets on a transfer case of a transmission.

9. On and before March 21, 2008, and at all times relevant herein, Defendant, INGERSOLL, knew or should have known that said air impact wrench would be utilized by end-users, to perform tasks similar in nature to those performed by Plaintiff, SANTILLAN, on March 21, 2008.

10. On and before March 21, 2008, and at all times relevant herein, Defendant, INGERSOLL, knew or should have known that consumers and end-users would use said air impact wrenches in conjunction with adapter sockets similar in nature to that used by Plaintiff, SANTILLAN, on March 21, 2008.

11. At the time of its design, manufacture, distribution, and/or marketing of said air impact wrench, Defendant, INGERSOLL, had a duty to place products into the stream of commerce that were free from defects and/or unreasonable dangers.

12. On and before March 21, 2008, and at all times relevant herein, and notwithstanding said duty, Defendant, INGERSOLL, designed, manufactured, distributed, and/or marketed, said air impact wrench in a manner that rendered the product unreasonably dangerous for the use in which intended in one or more of the following respects:

    a. Failed to include adequate and sufficient instructions for the proper use of said air impact wrench;

    b. Failed to provide adequate and sufficient warnings against the unreasonable dangers and/or hazards inherent in the use of said air impact wrench, including without limitation the risk of injury as the result of failure of an adapter socket;

    c. Failed to properly warn consumers and end-users, including Plaintiff, SANTILLAN, of the unreasonably dangerous condition and/or hazards of said air impact wrench, including without limitation the risk of injury as the result of the failure of an adapter socket;

    d. Inadequately designed said air impact wrench so as to prevent injury to persons using said air impact wrench;

    e. Failed to properly design said air impact wrench so as to properly, sufficiently, and adequately ensure the air impact wrench did not cause injury when used in the manner intended;

    f. Failed to properly design said air impact wrench for use in the manner intended;

    g. Manufactured said air impact wrench in a manner that rendered the air impact wrench defective and/or unreasonably dangerous when used in the manner intended;

    h. Failed to properly manufacture said air impact wrench for use in the manner intended; and/or

    i. Designed, manufactured, distributed, sold, and/or otherwise placed a defective and/or unreasonably dangerous product into the stream of commerce.

13. At the time said air impact wrench left the control of Defendant, INGERSOLL, the condition of said air impact wrench was defective and/or unreasonably dangerous due to one or more of the aforesaid conditions.

14. On March 21, 2008, Plaintiff, SANTILLAN, used said air impact wrench, in conjunction with said adapter socket, while removing sockets on a transfer case of a transmission when said adapter socket failed, causing the air impact wrench to strike Plaintiff in the right knee.

15. As a direct and proximate result of one or more of the foregoing conditions, Plaintiff, SANTILLAN, was seriously and permanently injured.

16. As a further direct and proximate result of the aforesaid conditions, Plaintiff, SANTILLAN, sustained injuries including but not limited to past and future pain and suffering, disfigurement, disability, sustained lost earnings and earning capacity, incurred legal responsibility for past medical bills and will likely incur legal responsibility for future medical bills and other damages, all of which injuries and conditions are permanent in nature.

WHEREFORE, Plaintiff, AUGUSTO SANTILLAN, prays for judgment against Defendant, INGERSOLL-RAND COMPANY, in an amount in excess of fifty thousand dollars ($50,000.00) plus costs of bringing this action, and for any further relief this Court deems appropriate.

## COUNT V
### (Santillan v. Ingersoll Rand Company – Products Liability/Negligence)

1-11. Plaintiff hereby restates and realleges paragraphs 1 through 11 of Count IV as paragraphs 1 through 11 of Count V, as though fully stated herein.

12. On and before March 21, 2008, and at all times relevant hereto, Defendant, INGERSOLL, committed one or more of the following acts and/or omissions, rendering said air impact wrench defective and/or unreasonably dangerous at the time said air impact wrench left Defendants, INGERSOLL's control and entered the stream of commerce:

   a. Negligently and carelessly failed to include adequate and sufficient instructions for the proper use of said air impact wrench;

   b. Negligently and carelessly failed to provide adequate and sufficient warnings against the unreasonable dangers and/or hazards inherent in the use of said air impact wrench, including without limitation the risk of injury as the result of failure of an adapter socket;

   c. Negligently and carelessly failed to properly warn consumers and end-users, including Plaintiff, SANTILLAN, of the unreasonably dangerous condition and/or hazards of said air impact wrench, including without limitation the risk of injury as the result of the failure of an adapter socket;

    d. Negligently and carelessly designed said air impact wrench so as to prevent injury to persons using said air impact wrench;

    e. Negligently and carelessly failed to properly design said air impact wrench so as to properly, sufficiently, and adequately ensure the air impact wrench did not cause injury when used in the manner intended;

    f. Negligently and carelessly failed to properly design said air impact wrench for use in the manner intended;

    g. Negligently and carelessly manufactured said air impact wrench in a manner that rendered the air impact wrench defective and/or unreasonably dangerous when used in the manner intended;

    h. Negligently and carelessly failed to properly manufacture said air impact wrench for use in the manner intended; and/or

    i. Negligently and carelessly designed, manufactured, distributed, sold, and/or otherwise placed a defective and/or unreasonably dangerous product into the stream of commerce.

13. On March 21, 2008, Plaintiff, SANTILLAN, used said air impact wrench, in conjunction with said adapter socket, while removing sockets on a transfer case of a transmission when said adapter socket failed, causing the air impact wrench to strike Plaintiff in the right knee.

14. As a direct and proximate result of one or more of the foregoing conditions, Plaintiff, SANTILLAN, was seriously and permanently injured.

15. As a further direct and proximate result of the aforesaid conditions, Plaintiff, SANTILLAN, sustained injuries including but not limited to past and future pain and suffering, disfigurement, disability, sustained lost earnings and earning capacity, incurred legal responsibility for past medical bills and will likely incur legal responsibility for future medical bills and other damages, all of which injuries and conditions are permanent in nature.

WHEREFORE, Plaintiff, AUGUSTO SANTILLAN, prays for judgment against Defendant, INGERSOLL-RAND COMPANY, in an amount in excess of fifty thousand dollars

($50,000.00) plus costs of bringing this action, and for any further relief this Court deems appropriate.

## COUNT VI
**(Santillan v. Ingersoll-Rand Company – Products Liability/Failure to Warn)**

1-11. Plaintiff repeats and realleges paragraphs 1 through 11 of Count IV as paragraphs 1 through 11 of Count VI, as though fully stated herein.

12. Defendant, INGERSOLL, knew or should have known that consumers and end-users, including Plaintiff, SANTILLAN, would use the aforesaid air impact wrench in the manner described herein.

13. Defendant, INGERSOLL, knew or should have known of the dangers associated with the manner and circumstances of Plaintiff, SANTILLAN's foreseeable use of the aforesaid air impact wrench, which danger was not obvious to the general public.

14. On and before March 21, 2008, and at all times relevant herein, it was the duty of Defendant, INGERSOLL, to warn against foreseeable dangers associated with the use of the aforesaid air impact wrench.

15. Notwithstanding the aforesaid duty, Defendant, INGERSOLL, committed one or more of the following acts and/or omissions:

   a. Failed to include adequate and sufficient warnings with said air impact wrench;

   b. Failed to provide adequate warnings to individuals of the dangers and/or hazards inherent in the use of said air impact wrench; and/or

   c. Failed to adequately and sufficiently warn of the nature and type of the aforesaid dangerous conditions and/or defects.

16. On March 21, 2008, Plaintiff, SANTILLAN, used said air impact wrench, in conjunction with said adapter socket, while removing sockets on a transfer case of a transmission

when said adapter socket failed, causing the air impact wrench to strike Plaintiff in the right knee.

17. As a direct and proximate result of one or more of the foregoing conditions, Plaintiff, SANTILLAN, was seriously and permanently injured.

18. As a further direct and proximate result of the aforesaid conditions, Plaintiff, SANTILLAN, sustained injuries including but not limited to past and future pain and suffering, disfigurement, disability, sustained lost earnings and earning capacity, incurred legal responsibility for past medical bills and will likely incur legal responsibility for future medical bills and other damages, all of which injuries and conditions are permanent in nature.

WHEREFORE, Plaintiff, AUGUSTO SANTILLAN, prays for judgment against Defendant, INGERSOLL-RAND COMPANY, in an amount in excess of fifty thousand dollars ($50,000.00) plus costs of bringing this action, and for any further relief this Court deems appropriate.

Respectfully Submitted
ROMANUCCI & BLANDIN, LLC

By: _____
Attorney for Plaintiff

Stephan D. Blandin
Michael E. Holden
ROMANUCCI & BLANDIN, LLC
33 N. LaSalle St.
Suite 2000
Chicago, IL 60602
Tel: (312) 458-1000
Fax: (312) 458-1004
Attorney No.: 38575



PLAINTIFF'S EXHIBIT A



PLAINTIFF'S EXHIBIT B

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| AUGUSTO SANTILLAN ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: |
| ) | |
| SNAP-ON INCORPORATED, a foreign ) | |
| corporation, INGERSOLL-RAND ) | |
| COMPANY, a foreign corporation, ) | |
| ) | |
| Defendants. ) | |

## JURY DEMAND

The undersigned demands a jury trial.

Respectfully Submitted,
ROMANUCCI & BLANDIN, LLC

By: _____
        Attorney for Plaintiff

Stephan D. Blandin
Michael E. Holden
ROMANUCCI & BLANDIN, LLC
33 N. LaSalle Street
Suite 2000
Chicago, Illinois 60602
Tel.: (312) 458-1000
Fax: (312) 458-1004
Attorney No.: 35875

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| AUGUSTO SANTILLAN )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SNAP-ON INCORPORATED, a foreign )<br>corporation, INGERSOLL-RAND )<br>COMPANY, a foreign corporation, )<br>)<br>Defendants. ) | No.: |

### AFFIDAVIT REGARDING DAMAGES SOUGHT

Michael E. Holden, being first duly sworn under oath, states as follows:

1. That your affiant is one of the attorneys of record for the party in this matter.

2. That the total money damages sought in this civil action exceeds $50,000.

FURTHER AFFIANT SAYETH NOT.

_____
Michael E. Holden

[X] Under penalties as provided by law pursuant to 735 ILCS 5/1-109 (1993), I certify that the statements set forth herein are true and correct.

Stephan D. Blandin
Michael E. Holden
ROMANUCCI & BLANDIN
33 North LaSalle Street
Suite 2000
Chicago, Illinois 60602
312/458-1000
Atty. No.: 35875